IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JAMES E. SMITH,                )
                               )
       Plaintiff,          )
                               )
v.                             )   CV 106-118
                               )
RONALD STRENGTH,               )
                               )
       Defendant.          )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, an inmate incarcerated at the Richmond County Jail ("RCJ") in Augusta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

### I.    BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff alleges that Defendant is "deliberately indifferent" to the inmates at the RCJ and the Charles

B. Webster Detention Center ("CWDC").[1] (Doc. no. 1, p. 5). Specifically, Plaintiff claims that (1) the RCJ is so overcrowded that inmates are forced to sleep on the floor, (2) the overcrowding increases the risk of contracting a staphylococcus ("staph") infection at the RCJ and the CWDC, (3) the overcrowding at the RCJ and the CWDC violates the Richmond County Fire Code, (4) "contraband is so bad at [the] RCJ and [the CWDC] . . . inmates made hundreds of dollars," (5) the overcrowding at the RCJ puts the inmates' safety in question, (6) inmates should be allowed to receive money in the mail, (7) inmates should have more access to the law library, and (8) inmates should be allowed to correspond with other inmates in other jails.[2] (Id.).

## II. DISCUSSION

As to Plaintiff's claims regarding other inmates selling contraband for money and receiving money in the mail, he is not entitled to proceed because these allegations are not federal rights for which Plaintiff can obtain relief under § 1983 (claims 4 and 6). See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (noting that a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law in order to prevail on a civil rights action under § 1983).

Next, Plaintiff's claims that there should be more access to the law library. To begin,

---

[1] Even though Plaintiff has indicated in his complaint that he is only incarcerated at the RCJ, the Court presumes that because Defendant oversees both the RCJ and the CWDC, Plaintiff is or can be transferred between the RCJ and the CWDC.

[2] It should be noted that Plaintiff included a second statement of claim alleging claims against "Sentinel." However, because "Sentinel" is not listed as a defendant and the page numbers of this insert do not correspond with the page numbers of Plaintiff's complaint, this statement of claim appears to be part of another, unrelated lawsuit. As such, the Court will disregard this insert.

it is of course true that prisoners have a constitutional right under the Fourteenth Amendment to meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 828 (1977). Thus, prisoners are entitled to legal research materials. Id. "The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a 'constitutional prerequisite.'" Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). The Eleventh Circuit has further explained the actual injury requirement:

> This essential standing requirement means that prison officials' [actions that] allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.

Wilson, 163 F.3d at 1290-91 (citations omitted).

Here, Plaintiff does not allege that Defendant's actions "hindered his 'efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996)(*per curiam*)). "[I]n an access-to-courts claim, 'a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.'" Wilson, 163 F.3d at 1291 (quoting Sabers, 100 F.3d at 84). Plaintiff also fails to argue that he has been denied complete access to the law library or to legal materials. Therefore, because Plaintiff does not allege an actual injury or a deprivation of legal material, his claim fails (claim 7).

Additionally, Plaintiff's claim that the overcrowding at the RCJ puts the inmates' safety in question is vague and conclusory. See Fullman v. Graddick, 739 F.2d 553, 556-57

(11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim). To the extent that Plaintiff refers to the Richmond County Fire Code, the Court has sanctioned this contention as an argument in support of his deliberate indifference claim. However, to the extent that Plaintiff is referring to some other safety argument, he neither explains what this safety argument is, nor does he state what harm he allegedly suffered. Moreover, Plaintiff does not allege how Defendant's actions contributed to this claim. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). Accordingly, Plaintiff's claim on this score should be dismissed (claim 5).

Moreover, Plaintiff's claim that inmates should be allowed to correspond with other inmates in other jails is also vague in that he does not allege that inmates are explicitly prevented from corresponding with other inmates, or that if such a jail policy exists, it is unconstitutional.[3] See Fullman, 739 F.2d at 556-57; see also Turner v. Safley, 482 U.S. 78, 91-93 (1987) (holding that the rules barring inmate-to-inmate correspondence was reasonably related to legitimate safety interests), superseded by statute on other grounds, 42 U.S.C. §§ 2000bb, 2000cc. Therefore, Plaintiff's claim should be dismissed (claim 8).

---

[3] To the extent that Plaintiff may be complaining that Defendant does not provide free postage for his out-going, non-legal mail, Plaintiff does not point to, and the Court is not aware of, a constitutional requirement that jail officials provide funding for a prisoner's non-legal mail.

### III. CONCLUSION

The Court finds, for the reasons set forth above, that Plaintiff's claims that "contraband is so bad at [the] RCJ and [the CWDC] . . . inmates made hundreds of dollars," the overcrowding at the RCJ puts the inmates' safety in question, inmates should be allowed to receive money in the mail, inmates should have more access to the law library, and inmates should be allowed to correspond with other inmates in other jails, are frivolous or fail to state a claim for which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** that these claims be **DISMISSED**.[4]

SO REPORTED and RECOMMENDED this 11th day of October, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4] By separate Order, the Court has directed that service of process be effected for Plaintiff's remaining, viable Eighth Amendment allegations.